IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RANDOLPH RAGLAND,

              Petitioner,

                                  **CASE NO. 2:08-CV-00716**
   v.                              **JUDGE SARGUS**
                                  **MAGISTRATE JUDGE KING**

WANZA JACKSON,

              Respondent.

**ORDER and**
**REPORT AND RECOMMENDATION**

      Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, Doc. No. 1,

respondent's return of writ, Doc. No. 8, and supplemental response, Doc. No. 13,

petitioner's traverse, Doc. No. 11, and the exhibits of the parties. For the reasons that

follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's request for an evidentiary hearing is **DENIED**.

**FACTS and PROCEDURAL HISTORY**

      The Ohio Tenth District Court of Appeals summarized the facts and procedural

history of this case as follows:

> On February 2, 2000, Ragland was indicted on two counts of
> rape. Ragland's co-defendant, his daughter Natasha Barnes,
> was indicted on one count of rape and one count of complicity
> to rape. These charges arose from the allegations of Barnes'
> best friend, who maintained that Ragland and Barnes raped
> her on or about August 30, 1999.

Ragland and Barnes waived their right to a trial by jury, and, thus, they were tried before a judge. Trial did not commence until March 4, 2004-over four years after the indicted offenses occurred.

At trial, the victim testified that she and Barnes had been friends for about three years. The victim and Barnes had met in high school, and after both graduated in 1999, they decided to live together in a house next door to Barnes' father.

The victim testified that in late August 1999, Ragland tried to hug her and kiss her on the neck. Although he did not persist when the victim pushed him away and said "no," the victim felt uncomfortable around him.

The evening of August 30, 1999, the victim, Barnes, and the victim's younger brother visited Ragland at his place of employment, the Waste Water Treatment Plant at Jackson Pike. The victim and Barnes then went to Ragland's house, where Barnes resided, so that they could pack Barnes' possessions for their move. While the girls were packing, Ragland gave them some marijuana, which Barnes made into a blunt that the girls smoked.

The victim, Barnes, and Ragland then went outside, and the victim and Barnes started drinking shots of vodka. The victim estimated that she downed approximately seven shots in quick succession. She started feeling intoxicated, so she went inside and laid down on the living room couch. Barnes joined her in the living room.

The victim testified that she fell asleep on the couch, but awoke to Ragland rubbing her arm and trying to kiss her. The victim told Ragland to stop and then followed Barnes into Ragland's bedroom. Both girls fell asleep again on Ragland's bed.

The victim next awoke when Ragland pushed her and Barnes off his bed. She blacked out on the floor, and when she came to, she was naked with both Barnes and Ragland on top of her. Barnes and Ragland were also naked.

The victim testified that Barnes was straddling her upper body, holding her arms to the floor with her knees. Ragland was on top of her lower body, performing oral sex on her. Ragland then engaged in vaginal intercourse with the victim, while Barnes restrained her arms. The victim also testified that Barnes performed oral sex on her.

Throughout the attack, the victim told Barnes and Ragland to stop and tried to get up. Neither Barnes nor Ragland responded to the victim's pleas, and they continued to hold her down. Eventually, the victim said that she was going to throw up, and the pair released her. The victim went into the bathroom, where she locked the door and cried. Barnes came to the bathroom door and asked the victim what was wrong, and then she retrieved a tampon for the victim after the victim asked for one.

After the victim left the bathroom, she had difficulty locating her clothes and dressed herself in the only clothes she could find-a shirt, panties, and shoes. When the victim could not find her car keys, she ran out of the house and down the street to the nearby Clark gas station. The victim banged on a side door until the gas station attendant unlocked it and let her enter. She told the gas station attendant that she had been raped, and he immediately called the police. In the meantime, Barnes came into the store. She repeatedly asked the victim what she was doing and to not tell the police. The victim responded that Barnes and Ragland had raped her and asked Barnes why they had done it. Barnes left the Clark station when the victim said she "was telling." Columbus police officers arrived soon thereafter and took the victim to the hospital.

Scott Prindle was the cashier on duty at the Clark gas station the night of August 30, 1999. He testified at trial that about 1:45 a.m., he saw two women running by his store. The woman in the lead, who appeared to be dressed only in her underwear, said she had been raped, so Prindle unlocked the side door and let the women enter. Prindle testified that the undressed woman looked shocked and was crying.

Once the women were in the gas station, the fully-clothed

woman begged the other woman not to call the police. The other woman responded that, "he raped me and you helped." When Prindle picked up the telephone to call the police, the fully-clothed woman ran out of the gas station. Prindle later saw her drive a car onto the Clark lot, park, and leave again.

Janice Cunningham, the victim's mother, testified that she received a phone call the night of August 30, 1999 from her daughter. Cunningham stated that her daughter was crying and that she had never heard her daughter as upset as she was that night. Harold Connley, a then Columbus patrol officer who responded to Prindle's call, also testified that the victim was very upset that night, to the point of being almost hysterical.

Barnes' testimony at trial varied significantly from the victim's testimony. Although Barnes also testified that she and the victim visited her father at the Waste Water Treatment Plant and then went to Barnes' home, she denied ever raping or helping to rape the victim. Rather, Barnes testified that after she and the victim first arrived at her home, they drank shots of vodka in Barnes' basement bedroom. They continued to drink on the front porch, and then went to the living room to watch television. Barnes maintained that the pair never smoked any marijuana that night.

Barnes fell asleep in the living room, and when she awoke, the victim was no longer there. Curious about the location of her friend, Barnes searched the house for her and found her and Ragland in Ragland's bedroom. Barnes testified that the victim was on top of Ragland, engaging in sexual intercourse with him.

Shocked by what she had seen, Barnes went to her downstairs bedroom and laid down on the couch. She fell asleep, but awoke again to find the victim bending over her and trying to kiss her. Barnes told the victim "no," and the victim went upstairs. The victim then came back downstairs and asked Barnes for a tampon. Barnes directed her to the downstairs bathroom, and the victim visited the bathroom and went back upstairs. Minutes later, Ragland came to the top of the stairs

and told Barnes that the victim was walking down the street in just her underwear. Barnes grabbed the victim's car keys from her dresser and drove the victim's car to the Clark gas station because Ragland told her that the victim had headed that way.

At the gas station, Barnes found the victim and asked her what was the matter. Barnes testified that the victim started crying and told Barnes to leave her alone. Although Barnes kept trying to get the victim to tell her what was the problem, the victim did not respond, so Barnes returned home.

Like his daughter, Ragland denied ever raping the victim. To the contrary, Ragland testified that he and the victim were engaged in a new sexual relationship that the victim had initiated. Ragland also testified that the victim discouraged him from working the night of August 30, 1999 so that they could spend time together.

That night, Ragland arrived at his house before the girls, and he took a bath. When he finished, he found Barnes and the victim outside, drinking and acting silly. Ragland told the victim to come to bed and retreated to his bedroom. The victim eventually followed Ragland into the bedroom, where they had consensual sexual intercourse.

Although Ragland admitted to tasting alcohol in the victim's mouth during this encounter, he denied smelling any marijuana on the victim. Ragland also denied giving the victim any marijuana.

Ragland testified that the victim tried to instigate further sexual intercourse, but he was no longer capable. Frustrated, the victim dressed in her shirt and panties and left his bedroom.

A short time later, Ragland heard a noise and rose to investigate. He found the victim climbing the stairs from the basement with a "far-away" look in her eyes. Ragland asked the victim what she was doing, and the victim told him that she was going outside to get some air. Ragland said that she could not go because she did not have pants on, but the victim

responded that she was just going to the carport. When the
victim started walking out to the carport, Ragland again asked
her what she was doing and what was wrong. The victim did
not respond and started walking toward the gas station.

Ragland yelled for his daughter, who followed the victim to
the gas station in the victim's car. After about ten minutes,
Barnes returned and told Ragland that the victim was at the
gas station, crying. Ragland asked Barnes what was wrong
with the victim, and Barnes said that she did not know.
Ragland then went back to bed.

After the close of evidence, the trial court found Ragland guilty
of both counts of rape and Barnes guilty of complicity to rape.
At a sexual predator hearing, the trial court considered the
facts adduced at trial and the information in Ragland's
pre-sentencing investigation report ("PSI report"), and
classified him as a sexual predator. The trial court then
sentenced Ragland to eight years of imprisonment on each
count of rape and ordered that Ragland serve these terms
consecutively.

On July 16, 2004, the trial court issued a judgment entry
reflecting Ragland's convictions, his sexual predator
classification, and his sentence.

*State v. Ragland,* 2005 WL 2133681 (Ohio App. 10th Dist. September 6, 2005). Petitioner filed

a timely appeal, in which he asserted the following assignments of error:

[1.] There was insufficient evidence to support Appellant's
conviction and the conviction was against the manifest weight
of the evidence.

[2.] The trial court committed reversible error when it labeled
Appellant a sexual predator when there was insufficient
evidence to prove by a[sic] clear and convincing evidence that
Appellant met the criteria for said label.

[3.] The trial court committed reversible error when it
permitted hearsay evidence from the alleged victim's mother

as to what the alleged victim told her father over the phone, when said statement clearly was intended to prove the truth of the matter asserted.

*See id.* On September 6, 2005, the appellate court affirmed the trial court's judgment. *Id.*

On January 25, 2006, the Ohio Supreme Court dismissed petitioner's subsequent appeal.

*State v. Ragland*, 108 Ohio St.3d 1317 (2006).

Subsequently, appellant filed an application to reopen his appeal pursuant to App.R. 26(B). This court granted appellant's application, finding that a genuine issue of material fact existed regarding whether appellate counsel was ineffective for not raising an argument pursuant to *Blakely v. Washington (2004),* 542 U.S. 296, 124 S.Ct. 2531, in his direct appeal. However, we limited the reopening of his appeal to the sentencing issue raised in the application. *State v. Ragland (Mar. 23, 2006),* Franklin App. No. 04AP-829 (Memorandum Decision). On reopening, appellant assigns the following errors:

[1]. APPELLANT'S SENTENCE IS UNCONSTITUTIONAL UNDER THE OHIO AND UNITED STATES CONSTITUTIONS PURSUANT TO *APPRENDI V. NEW JERSEY* * * *; *BLAKELY V. WASHINGTON* * * *; AND *UNITED STATES V. BOOKER* * * *, AS INTERPRETED BY THE OHIO SUPREME COURT IN *STATE V. FOSTER* * * *.

[2]. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL PURSUANT TO *STRICKLAND V. WASHINGTON* WHEN COUNSEL FAILED TO RAISE AT SENTENCING THE UNCONSTITUTIONALITY OF THE OHIO SENTENCING STATUTES * * *.

[3]. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO TRIAL BY JURY BY SENTENCING APPELLANT TO A TERM OF INCARCERATION WHICH EXCEEDED THE STATUTORY MAXIMUM MANDATED BY THE SIXTH AND FOURTEENTH AMENDMENTS.

> [4]. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE FEDERAL CONSTITUTION BY SENTENCING APPELLANT TO A TERM OF INCARCERATION WHICH EXCEEDED THE MAXIMUM PENALTY AVAILABLE UNDER THE STATUTORY FRAMEWORK AT THE TIME OF THE OFFENSE.
>
> [5]. THE RULE OF LENITY REQUIRES THE IMPOSITION OF MINIMUM AND CONCURRENT SENTENCES, AND THE RULING OF THE TRIAL COURT TO THE CONTRARY MUST BE REVERSED.

*State v. Ragland,* 2007 WL 612404 (Ohio App. 10th Dist. March 1, 2007). On March 1, 2007, the state appellate court affirmed the judgment of the trial court. *Id.* The Ohio Supreme Court accepted petitioner's appeal on petitioner's claim that his sentence violated *Blakely.* *State v. Ragland*, 114 Ohio St.3d 1478 (2007). On October 24, 2007, the Ohio Supreme Court affirmed the judgment of the Ohio Court of Appeals on the authority of *State v. Payne*, 114 Ohio St.3d 502 (2007). *Exhibit 27 to Return of Writ.*

On July 23, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. There was insufficient evidence to support appellant's conviction and the conviction was against the manifest weight of the evidence.
>
> There was ample evidence to conclude that appellant had a romantic relationship with the victim, and that the alleged victim blamed everyone else except herself for her behavior.
>
> 2. The trial court committed reversible error when it labeled appellant a sexual predator when there was insufficient

evidence to prove by a clear and convincing evidence that appellant met the criteria for said label.

3. The trial court committed reversible error when it permitted hearsay evidence from the alleged victim's mother as to what the alleged victim told her father over the phone.

The trial court allowed [the victim's] mother, Janice Cunningham, to testify that her husband told her that [the victim] told him over the phone that she had been raped.

4. A sentence is unconstitutional under the Ohio and United States constitutions pursuant to *Apprendi v. New Jersey* and [] *Blakely v. Washington.*

Other than the fact [of] a past conviction, any fact that enhances a person['s] sentence violates his right to a jury trial. *Blakely v. Washington.* Sixth Amendment violation.

Petitioner has withdrawn claim three and the allegation in claim one that his convictions were against the manifest weight of the evidence. *See Traverse*, at 2, 4. It is the position of the respondent that petitioner's remaining claims are without merit.

## CLAIM ONE

In claim one, petitioner continues to argue that there was insufficient evidence to sustain his convictions.

The Due Process Clause provides relief to persons who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a constitutional sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Id.*, at

319; *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir. 1983).

The state appellate court rejected this claim in relevant part as follows:

> By his first assignment of error, Ragland challenges... the sufficiency of the evidence supporting his conviction ....

> [W]ith respect to sufficiency of the evidence, the operative inquiry is whether the evidence is adequate to sustain a verdict. *Id.,* at 386-387, 678 N.E.2d 541. When reviewing the sufficiency of the evidence, an appellate court must:

> [E]xamine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *

> *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, *paragraph two of the syllabus.* This test raises a question of law and does not allow the court to weigh the evidence. *Thompkins,* at 386, 678 N.E.2d 541; *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Consequently, when reviewing the sufficiency of the evidence, an appellate court must accept the determination of the finder of fact with regard to the credibility of the witnesses. *State v. Yarbrough,* 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, at ¶ 79; *State v. Worrell,* Franklin App. No. 04AP-410, 2005-Ohio-1521, at ¶ 41 ("In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support a conviction.").

A trier of fact must convict a defendant of rape if the state

proves beyond a reasonable doubt that the defendant engaged in sexual conduct with another when the defendant purposely compels the other person to submit by force or threat of force. R.C. 2907.02(B). Here, the victim's testimony, viewed in the state's favor, establishes the elements of each rape offense beyond a reasonable doubt. The victim testified that Ragland held her down and forced both vaginal and oral intercourse on her, despite her pleas to stop and let her go. Accordingly, we conclude that sufficient evidence supported Ragland's conviction.

In arguing otherwise, Ragland does not maintain that the state failed to prove any element of rape. Rather, Ragland attacks the victim's credibility, arguing that her testimony cannot be believed because: (1) she admitted that she blacked out the night of August 30, 1999, (2) she allowed that she might do things while intoxicated that she may not do sober, and (3) her testimony contained inconsistencies. However, as we stated above, an appellate court cannot evaluate a witness' credibility on a review for evidentiary sufficiency but, instead, must adopt the trier of fact's credibility determination. *Yarborough, supra,* at ¶ 79. Therefore, Ragland's attack on the victim's credibility does not alter our conclusion that the evidence is sufficient for conviction.

In challenging the sufficiency of the evidence, Ragland also argues that this court cannot rely upon the testimony of Prindle, the Clark gas station attendant. Although Prindle's testimony supports the victim's version of the events, it is irrelevant to our review of the sufficiency of the evidence. As we stated above, the victim's testimony alone, when viewed in the light most favorable to the state, adequately establishes each element of the rape offenses.

\*\*\*

[O]ur review of the victim's testimony does not reveal any major inconsistencies that would lead us to doubt her believability. Indisputably, during her testimony, the victim could not remember certain details and she sometimes contradicted statements she had given earlier. However,

considering that more than four years had elapsed between August 30, 1999 and the beginning of the trial, a certain amount of memory loss and inconsistency is normal and does not adversely impact a witness' credibility. *State v. Brown*, Franklin App. No. 03AP-331, 2004-Ohio-1219, at ¶ 25.

Further, the victim's testimony is buttressed by the testimony of Prindle, the only disinterested witness to the major events of August 30, 1999. Prindle testified that he heard the victim say, "he raped me and you helped" as Barnes begged the victim not to call the police. This testimony, along with his recounting of the actions of the victim and Barnes while they were in the Clark gas station, dovetails with the victim's testimony and, thus, supports her version of the events.

*State v. Ragland, supra,* 2005 WL 2133681. The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d)(1), (2). The United States District Court for the Western District of Michigan has summarized this standard as follows:

[A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id*. at

12

413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000). Petitioner has failed to meet this standard here.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia, supra*, 443 U.S. at 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992) (citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Petitioner argues that the trial produced as much evidence of his innocence as of his

guilt. He contends that the testimony of the alleged victim and the gas station attendant was unreliable and he requests an evidentiary hearing on this issue. *See Traverse*. Petitioner has also submitted numerous letters from individuals attesting to his good character and their belief in his innocence. *See Exhibits to Traverse*. However, in determining whether the evidence was constitutionally sufficient to sustain petitioner's convictions, this Court must consider only whether the evidence, viewed in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, offered constitutionally sufficient support for petitioner's convictions. For the reasons detailed by the state appellate court, this Court agrees that the testimony of the victim provided such support.

Claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that the trial court improperly labeled him a sexual predator. This claim fails to present an issue appropriate for federal habeas corpus review. To the extent that petitioner asserts a violation of Ohio law, a federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610,

614 (6th Cir.1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir.1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here. Moreover,

> [t]he Sixth Circuit has held that a prisoner challenging the application of Ohio's sexual predator law, even a prisoner who is currently incarcerated, fails to satisfy the "in custody" requirement necessary to obtain habeas relief. *See Leslie v. Randle,* 296 F.3d 518, 520-22 (6th Cir. 2002) (reasoning that Ohio's sexual-predator statute places no constraints on a person's movement or ability to engage in legal activities); *accord Cox v. Brunsman,* 2008 U.S. Dist. LEXIS 78799, 2008 WL 4185958, (S.D. Ohio Sept. 5, 2008); *see also Thomas v. Morgan,* 109 F.Supp.2d 763, 767 (N.D. Ohio 2000) ("[T]he classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas corpus.")

*Jones v. Beightler,* 2009 WL 1652131 (N.D. Ohio June 10, 2009).

Claim two is without merit.

### CLAIM FOUR

In claim four, petitioner asserts that his sentence violated *Blakely v. Washington, supra.* Respondent contends that this claim is procedurally defaulted because petitioner failed to raise the objection at sentencing and the state appellate court, in rejecting petitioner's reopened appeal under Rule 26(B), held that he had thereby waived all but plain error review of this claim. *See Respondent's Supplemental Memorandum,* Doc. No. 13;

*State v. Ragland,* 2007 WL 612404 (Ohio App. 10th Dist. March 1, 2007).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 447 U.S. 478, 485 (1986); *Engle v. Issac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.*

Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

The state appellate court rejected petitioner's reopened appeal under Rule 26(B) in relevant part as follows:

> [A]ppellant filed an application to reopen his appeal pursuant to App.R. 26(B). This court granted appellant's application, finding that a genuine issue of material fact existed regarding whether appellate counsel was ineffective for not raising an argument pursuant to *Blakely v. Washington (*2004), 542 U.S. 296, 124 S.Ct. 2531, in his direct appeal. However, we limited the reopening of his appeal to the sentencing issue raised in the application. *State v. Ragland* (Mar. 23, 2006), Franklin App. No. 04AP-829 (Memorandum Decision).
>
> ***
>
> [A]ppellant claims that the trial court violated *Blakely* by imposing non-minimum, consecutive sentences based on factual findings neither admitted by him nor found by a jury. Appellant was sentenced after *Blakely* but did not object to the trial court's sentence based on *Blakely.* Therefore, appellant has waived this challenge. *State v. Draughon*, Franklin App. No. 05AP-860, 2006-Ohio-2445, at ¶ *7;State v. Payne*, Franklin App. No. 05AP-517, 2006-Ohio-2552, at ¶ 6. Appellant also fails to demonstrate plain error because a trial court is no longer required to engage in judicial findings prior to the imposition of consecutive sentences. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. See *State v. Darks,* Franklin App. No. 05AP-982, 2006-Ohio-3144, at ¶23.

*State v. Ragland, supra,* 2007 WL 612404. The United States Court of Appeals for the Sixth Circuit has held that "Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice," and that plain error review "does not constitute a waiver of state procedural default rules." *Hinkle v. Randle,* 271 F.3d 239, 244 (6ᵗʰ cir. 2001) (citations omitted).

The Court notes, however, that petitioner was sentenced on July 6, 2004, *see Exhibit 4 to Return of Writ,* after the United States Supreme Court's June 24, 2004, decision in *Blakely,* but long before the Ohio Supreme Court's decision in *State v. Foster,* 109 Ohio St.3d 1 (2006), which found the fact finding provisions of Ohio's sentencing statutes unconstitutional under *Blakely.* The Ohio Supreme Court in *Foster* remanded all cases then pending on direct review for re-sentencing without regard to whether the defendant had properly preserved the claim by raising the objection at sentencing. *State v. Foster, supra,* 109 Ohio St.3d at 31.

At least prior to the Ohio Supreme Court's September 26, 2007, decision in *State v. Payne,* 114 Ohio St.3d 502, 506 (2007)(holding that a defendant sentenced after *Blakely* must raise the objection at sentencing or forfeit the error for appellate review), Ohio appellate courts disagreed on whether a failure to raise a *Blakely* objection at sentencing precluded appellate review of such claim. *See, e.g., State v. Scranton Buchanan,* 2006 WL 3059911 (Ohio App. 7th Dist. October 26, 2006)(and cases cited therein). Arguably, therefore, the procedural rule relied on by the state appellate court foreclosing appellate review of petitioner's *Blakely* claim was not consistently enforced so as to preclude federal habeas

corpus review of this claim. *See, e.g., Curtis v. Brunsman*, 2009 WL 1585527 (S.D. Ohio June 4, 2009); *but see Morris v. Kerns*, 2009 WL 2169210 (S.D. Ohio July 20, 2009).[1] The Ohio Tenth District Court of Appeals, which considered petitioner's appeal, enforced Ohio's contemporaneous objection rule on *Blakely* claims. *See State v. Draughon*, 2006 WL 1351607 (Ohio App. 10th Dist. May 16, 2006).

Under *Maupin,* the procedural rule barring federal habeas corpus review of a petitioner's claim must constitute an adequate and independent state ground upon which to deny relief. To qualify as "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To qualify as "adequate," the state procedural rule must, among other things, be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341 (1964); *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002). *See also Richey v. Mitchell*, 395 F.3d 660, 679-80 (6th Cir. 2005) (Although Rule 26(B) had not been regularly followed in 1994, application of the rule had been regularized by 1998).

Even assuming that petitioner's *Blakely* claim is properly before this Court, the claim

---

[1] In *Morris v. Kerns, supra*, this Court rejected the argument that a defendant sentenced after *Blakely* but prior to *State v. Payne, supra*, 114 Ohio St.3d at 5021, was not required to raise the objection at sentencing in order to preserve the claim for federal habeas corpus review.

is nevertheless without merit. The trial court sentenced petitioner to two consecutive terms of eight years incarceration on each of his rape convictions under O.R.C. §2907.02, each felonies of the first degree punishable by three to ten years incarceration. See O.R.C. §2929.14(A)(1). Under O.R.C. §2929.13(F)(2), petitioner's convictions required the imposition of a term of imprisonment. *Id.; see Sentencing Transcript*, at 19. However, the United States Supreme Court has held that the imposition of consecutive sentences based on judicial fact finding does not violate the Sixth Amendment. *Oregon v. Ice*, 129 S.Ct. 711 (2009). Further, and contrary to petitioner's contention, the trial court was not required to engage in prohibited fact finding before imposing more than minimum terms of incarceration on petitioner's rape convictions, because it was not disputed that petitioner had previously been sentenced to prison.[2] *See* O.R.C. 2929.14(B);[3] *State v. Foster, supra*, 109 Ohio St.3d at 19-20. The trial judge noted that she was not bound by the minimum term when imposing sentence. *Sentencing Transcript*, at 34.

---

[2] Petitioner was previously sentenced to 60 months on a conviction for gross sexual imposition. *Sentencing Transcript*, at 8; 33-34.

[3] O.R.C. §2929.14(B) provides in relevant part as follows:

... if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

December 21, 2009                                          *s/Norah McCann King*
                                                         United States Magistrate Judge